IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STEVEN J. MARANVILLE,<br><br>Plaintiff,<br><br>vs.<br><br>UTAH VALLEY UNIVERSITY, SCOTT HAMMOND, IAN WILSON, and JOHN and JANE DOES 1-10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:11-cv-958<br><br>Judge Dee Benson |

This matter is before the court on plaintiff Steven Maranville's Amended Motion for Partial Summary Judgment (Dkt. No. 35.) against defendants, Utah Valley University, Scott Hammond, Ian Wilson, and John and Jane Does 1-10's Cross Motion for Summary Judgment (Dkt. No. 51.). On August 12, 2013, the court heard oral argument on the motions. Mr. Robert Sykes appeared on behalf of the plaintiff, Mr. Steven Maranville. Mr. David Pena appeared on behalf of defendants Utah Valley University, Scott Hammond, Ian Wilson, et al. Having considered the parties' arguments, memoranda, and the relevant law, the court enters the following Memorandum Decision and Order.

1

**BACKGROUND**

In December 2008, Steven Maranville was offered a tenure-track faculty position at Utah Valley University's School of Business ("UVU"), which he accepted. The contract, signed by Bruce Parker, Associate Vice President for Academic Affairs, explained that plaintiff was being employed for a one-year probationary period. Because plaintiff was already a tenured professor at another institution, the contract provided that he would receive tenure at UVU upon successfully completing his probationary period and obtaining the written recommendations of both his Department Chair and Dean. *Def.'s Ex. B.*

Plaintiff was provided a Letter of Appointment dated May 22, 2009, signed by UVU President Matthew Holland, which stated that plaintiff's "appointment is for 2 academic semesters (173 actual work days and paid holidays) at the salary of $85,000 payable in 21 installments (September 1, 2009-June 30, 2010)." The Letter of Appointment again notified plaintiff that he could obtain tenure after successfully completing a "one-year probationary period" and that he was not "required to submit a formal tenure file or application, but will need the written recommendation of [his] Department Chair and Dean." *Def.'s Ex. C.*

After plaintiff commenced work, UVU received numerous student complaints alleging that plaintiff was rude and unprofessional. Plaintiff also received poor evaluations from students in other categories, such as whether plaintiff was fair and respectful. *Def.'s Ex. E; Def.'s Ex. F, Hammond Dep. at 38-39.* The complaints were the worst plaintiff's Department Chair, Scott Hammond, had ever encountered. *Def.'s Ex. F, Hammond Dep at 37-39, 95-96.* Scott Hammond worked with plaintiff to address the student complaints. *Def.'s Ex. F, Hammond Dep.*

*at 44-45, 56-59; Def.'s Ex. H, Pl.s Ans. to Int. No. 6; Ex. A, Pl.s Amend. Comp. ¶¶ 61-66.*

On February 1, 2010, Scott Hammond wrote to his supervisor, the Dean of UVU's School of Business, Ian Wilson, and recommended that due to continuing student complaints, plaintiff not be granted tenure but instead be given another year to improve and earn tenure. *Def.'s Ex. I*. On February 15, 2010, Ian Wilson wrote to his supervisor, Associate Vice President of Academic Affairs, Mohammad El-Saidi, and recommended that due to continuing student complaints, he could not recommend that plaintiff be granted tenure. He instead recommended that plaintiff be given another year to improve and earn tenure. *Def.'s Ex. J*. Hammond and Wilson later sent a joint letter to El- Saidi. The letter stated that (although they had earlier recommended against tenure but for an additional probationary period) due to continuing complaints from students regarding plaintiff's unprofessional behavior that a decision to not recommend plaintiff for tenure would be appropriate. *Def.'s Ex. K*. Hammond and Wilson jointly recommended to El-Saidi that plaintiff receive another one-year contract to provide him with time to find work elsewhere. *Id.*

On March 15, 2010, after receiving recommendations from Hammond, the Department Chair, and Wilson, the Dean of the School of Business, the Vice President for Academic Affairs, Elizabeth Hitch, sent plaintiff a letter explaining that due to his classroom behavior, she was recommending to the President of UVU that plaintiff not be granted tenure and be given a final one-year contract. *Def.'s Ex. L*. On March 31, 2010, UVU President Matthew Holland wrote to plaintiff advising plaintiff that he had recommended to the Board of Trustees that plaintiff not be granted tenure based on concerns about his behavior as a teacher. *Def.'s Ex. M*. President

Holland later wrote to plaintiff advising him that the Board of Trustees voted to not grant tenure due to "serious concerns regarding [plaintiff's] classroom behavior which is not acceptable to be granted tenure." *Def.'s Ex. N*.

After plaintiff was denied tenure, Dean Ian Wilson offered him an opportunity to appeal. Plaintiff declined to take the appeal. *Def.'s Ex. G, Maranville Dep at 88-89.* Plaintiff was offered a second one-year appointment to work for two academic semesters. The Letter of Appointment stated that UVU would not "continue [plaintiff's] annual appointment beyond the coming 2010-2011 academic year." *Def.'s Ex. O*.

When a new Dean, Norman Wright, was hired in place of Ian Wilson, plaintiff asked to meet with Mr. Wright to discuss the decision which denied him tenure and the continuation of his employment. Plaintiff met with Dean Wright for approximately two hours and pled his case. The Dean declined to revise the previous decisions. *Def.'s Ex. G, Maranville Dep. at 85-88.* Plaintiff completed the second one-year contract offered by UVU and later accepted employment as a professor with Westminster College. *Def.'s Ex. A, Pl.s Amend. Comp. ¶ 103; Def.'s Ex. G, Maranville Dep. at 72.*

In the motion before the court, plaintiff argued four separate causes of action: 1) breach of contract–that defendants breached his contract by "failing to grant plaintiff tenure after he fulfilled his duties under the contract." *Ex. A, Pl.s Amend. Comp. at 19.;* 2) breach of the covenant of good faith and fair dealing; 3) a violation of plaintiff's federal due process rights–that defendants violated plaintiff's federal due process rights under the Fourteenth Amendment by failing to provide plaintiff with adequate due process in denying him tenure; and

4

4) a violation of plaintiff's state procedural due process rights–that UVU violated his procedural due process rights when they "terminated" plaintiff's employment "without due process or pre-termination notice, for alleged lack of student approval." *Def.'s Ex. A, Pl.s Amend. Comp. at 23*.

## DISCUSSION

### Breach of Contract

The plaintiff accepted a position with UVU as an associate professor in the Department of Management, pursuant to the terms of a contract he signed on December 5, 2008. *Pl.'s Ex. 8*. The contract plainly stated, *inter alia*, that the plaintiff's position was a "tenure-track faculty position." *Id.* Recognizing that the plaintiff had previously achieved tenure status at a different university, UVU placed in the contract the following language: "[d]ue to the fact that you have been awarded tenure previously, UVU will recognize that achievement and provide tenure to the appropriate UVU department after successful completion of a one-year probationary period." *Id.* Additionally, the contract stated "[y]ou will not be required to submit a formal tenure file or application for [tenure] to occur, but you will need the written recommendation of your Department Chair and Dean." *Id.*

Shortly after the plaintiff commenced working as an associate professor, the University began receiving numerous complaints concerning the plaintiff's classroom behavior and conduct. *Def.'s Ex. E*. Student complaints came to the attention of UVU administrators through end-of-semester student evaluations, as well as emails that were sent directly to plaintiff's supervisor. *Id.* Student complaints were numerous, and ranged from the plaintiff making a student feel uncomfortable because he professed love for certain students during a class to screaming "shut

up!" at a student who was attempting to answer a question plaintiff had just asked. Students further complained that the plaintiff's treatment of students was "rude," "condescending," "humiliating," and "belittling." One student summed up his opinion of the plaintiff by referring to him as a "condescending asshole." *Id.* Department Chair, Scott Hammond, stated that "[the complaints] were the worst he [had] ever seen." *Def.'s Ex. F, Hammond Dep at 37-39, 95-96.*

UVU attempted to improve plaintiff's behavior and teaching, including by having other teachers sit in on his classes, and having plaintiff seek input from his students. *Def.'s Ex. A, Pl.s Amend. Comp. ¶¶ 61-66; Def.'s Ex. G, Maranville Depo. at 33-34; Def.'s Ex. F, Hammond Depo. at 45; Pl.'s Ex. 13.* The record is clear that plaintiff was made aware that student complaints could negatively impact his chance to obtain tenure. (Indeed, plaintiff actively sought a meeting with his supervisor to discuss his status in light of the negative student complaints and evaluations.) *Def.'s Ex. A, Pl.s Amend. Comp. p. 16, ¶¶ 89-91*; *Pl.'s Ex. 13*.

Although his supervisors attempted to work with him, the negative student comments persisted, ultimately resulting in the plaintiff not receiving recommendations from either Department Chair Scott Hammond or Dean Ian Wilson. *Def.'s Ex. K.* Pursuant to the terms of plaintiff's contract with UVU, he was therefore not granted tenure.

Pursuant to the unambiguous terms of plaintiff's contract with the University, plaintiff's award of tenure was predicated on three conditions: 1) that he "successfully complet[e]" one year of probation, 2) that he obtain the "written recommendation of [his] Department Chair," and 3) that he obtain "the written recommendation" of his Dean. *Pl.'s Ex. 8.* The record clearly reflects, indeed it is undisputed, that the plaintiff did not receive the written recommendations

from either the Department Chair or the Dean.  On that basis alone, the court must find that the defendants did not breach the contract.  Moreover, the court finds a sufficient basis in fact, relating to the volume and magnitude of negative reports evidencing plaintiff's classroom conduct and behavioral problems, to hold that no reasonable jury could find that the Department Chair and Dean's recommendations were unreasonably withheld.

## Breach of Covenant of Good Faith and Fair Dealing

The Utah State Supreme Court has held that the covenant of good faith and fair dealing only imposes a duty on parties to a contract to not intentionally injure or destroy the other party's ability to obtain the benefits of a contract.  *See*, *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 816 (Utah 2011)(other citations omitted).  The record in this case supports that the defendants did not take any affirmative acts to injure or destroy plaintiff's opportunity to receive tenure under the terms of his contract; to the contrary, the defendants affirmatively took actions to aid and assist the plaintiff in realizing his goal of tenure.  *See*, *Def.'s Ex. F, Hammond Dep. at 44-45, 56-59; Def.'s Ex. H, Pl.s Ans. to Int. No. 6; Def.'s Ex. A, Pl.s Amend. Comp. ¶¶ 61-66*.  Accordingly, the court finds as a matter of fact and law that there is no merit to this cause of action.  No reasonable jury could conclude otherwise.

## Federal and State Due Process

In plaintiff's third and fourth causes of action, plaintiff argued that defendants "failure to provide pre-termination notice and a hearing was in violation of the Fifth and Fourteenth Amendments cognizable under 42 U.S.C. § 1983" and the Utah State Constitution.  *Def.'s Ex. A, Pl.s Amend. Comp. ¶¶ 114-125*.  "The first inquiry in every due process challenge is whether the

plaintiff has been deprived of a protected interest in 'property'...." *American Manuf. V. Mutual Ins. Co.*, 526 U.S. 40, 59 (1999).

The plaintiff was a tenured professor at an out-of-state university, before applying for, and receiving, his offer of employment with UVU. As previously noted, the terms of his contract with the University were unambiguous and clear:

> Due to the fact that you have been awarded tenure previously, UVU will recognize that achievement and provide tenure to the appropriate UVU department **after successful completion of a one-year probationary period**. You will not be required to submit a formal tenure file or application for this to occur, but **you will need the written recommendation of your Department Chair and Dean.**

*Pl.'s Ex. 8. (emphasis added)*

The question of whether a "tenure-track" professor has a "property interest," for purposes of due process protections, is not an original one. For example, in *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), Roth had been hired, as was plaintiff, to a one-year term to begin on September 1, 1968, and end on June 30, 1969. *Id.* at 566. He was on a tenure-track and could obtain tenure after four years. *Id.* He completed his first one-year term, but was not rehired for the next school year and was not given any sort of notice, hearing, or other opportunity to challenge the decision. *Id.* Roth brought suit and argued, *inter alia,* that the University of Wisconsin's failure to give him notice and a hearing before not renewing his contract violated his procedural due process rights. *Id.* at 569. The district court agreed and granted Roth summary judgment, ordering that the University provide Roth with some explanation and a hearing. The court of appeals affirmed. The United States Supreme Court granted certiorari on the question of "whether [Roth] had a constitutional right to a statement of

8

reasons and a hearing on the University's decision not to rehire him for another year." *Id.* In deciding that Roth did not have any constitutional right to due process the Court held:

> "[Roth's] property interest in employment . . . was created and defined by the terms of his appointment. Those terms secured his interest in employment up to June 30, 1969. But the important fact in this case is that they specifically provided that [Roth's] employment was to terminate on June 30. They did not provide for contract renewal absent 'sufficient cause.' Indeed, they made no provision for renewal whatsoever.
>
> Thus, the terms of [Roth's] appointment secured absolutely no interest in reemployment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, [Roth] surely had an abstract concern in being rehired, but he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment.

*Id.* at 578.

Plaintiff's two employment contracts similarly contain no plain terms that provide for guaranteed tenure or other entitlement to continued employment beyond the one-year period contained in each. At best, plaintiff's first contract merely acknowledges that plaintiff is on a tenure-track and might be awarded tenure if he is deemed successful during his probationary period and gets the recommendations of two of his supervisors. Plaintiff, like Roth, may have had a subjective "expectation" or hope of attaining tenure and continuing employment, but he did not have a protected property interest beyond the one-year term of his contract.

In *Bunger v. Univ. of Oklahoma Bd of Regents*, 95 F.3d 987 (10th Cir. 1996), two tenure-track professors were denied reappointment and subsequently sued, arguing that their university employer failed to follow its policies and procedures. In Oklahoma, which like Utah provides

9

for at-will-employment, the Tenth Circuit found that:

> "[P]ublic employees are employed at-will unless they have specific contractual arrangements entitling them to continued employment, such as tenure agreements. Tenured professors in Oklahoma possess a property interest in their continued employment that is protected by the Due Process Clause. However, untenured professors in Oklahoma do not possess the 'legitimate claim of entitlement' to their reappointment absent a specific contractual guarantee to that effect. Consequently, [Plaintiffs] can assert no constitutionally-cognizable property interest in their reappointment."

*Id.* at 990 (citations omitted).

> "Only a formal guarantee of continuing employment under color of state law–of which academic tenure is a classic example–would have created a property interest. In sum, because [Plaintiffs] do not possess a property interest in their reappointment, they may not avail themselves of the constitutional protections of the Due Process Clause."

*Id.*

In the present case, the plaintiff was never given any promise of tenure. He was recognized by the University for his past achievement of having once obtained tenure at a previous institution. However, his contract clearly stated conditions precedent to obtaining tenure at UVU. Again, he was required to 1) successfully complete a one-year probationary period, 2) receive the written recommendation of his Department Chair, and 3) receive the written recommendation of the Dean.

Consistent with *Roth* and *Bunger*, the court finds that because the plaintiff's future employment status was not guaranteed, the plaintiff did not have a "property interest" right to his employment. Because the plaintiff did not have a protected "property interest" in his employment status, his due process claims must fail.

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' briefs, Plaintiff's Amended Motion for Partial Summary Judgment is DENIED. Defendants' Motion for Summary Judgment is GRANTED.

DATED this 19th day of August, 2013.

_____
Dee Benson
United States District Judge